SYNOD OF MISSISSIPPI *et al. v.* SOUTHWESTERN *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Dec. 17, 1938.

J. B. HUTTON, JR., and S. V. ROBERTSON, both of Jackson, Miss., and HILLSMAN TAYLOR, of Memphis, for appellants.

BURCH, MINOR & McKAY and LUCIUS E. BURCH, JR., all of Memphis, and FRED H. MONTGOMERY, of Clarksdale, Miss., for appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainants are the Synod, the governing body of the Presbyterian Church in Mississippi, and W. H. McIntosh, J. B. Hutton, and R. W. Hardy, the Synod's appointees on the Board of Directors of Southwestern University. The defendants are Southwestern, a corporation organized under the laws of Tennessee as an educational institution, the officers and directors of the corporation, and the Synods of Tennessee, Alabama, and Louisiana.

The prayer of the bill is for a declaratory judgment that the Synod of Mississippi has a right to appoint four persons of its own choice as members of the Board of Directors, and that the action of the Board of Directors in refusing to recognize the appointment of Dr. W. H. McIntosh as a member of the Board was illegal, and that

by decree Dr. McIntosh be declared a member of the Board. Upon answer filed as a cross bill defendants seek a declaratory judgment that the form of acceptance exacted by the Synod of Mississippi of its appointees on the Board is void.

Southwestern Presbyterian University was incorporated under chapter 142, Acts of 1875, as the result of a plan formulated by a synodical conference in 1873. By a provision of the statute which was omitted from the charter, the incorporators became the first Board of Directors. This provision of the charter was waived. The plan of union was adopted as a by-law and by arrangement the patronizing Synods were authorized to control the corporation through appointment of directors of their own choice. The plan then adopted continued even after the enactment of chapter 6, Acts of 1895, which expressly empowered the patronizing Synods to elect the Board of Directors.

In 1905 in a litigation between the corporation and the Synods involving removal of the University from Clarksville, Tennessee, to Atlanta, Georgia, this court decreed that the University was under the patronage of the Presbyterian Church in the United States, and that in this relation of patronage the Synods acted for the church and could each elect two directors according to the plan of union originally adopted. Whether the conclusion of the court rested upon the fact that the original plan of union was a by-law of the corporation or that the corporation and all laws under which it was created was subordinate to the plan of union because of the right of the Synods as patrons to exercise the power of control is not determinable from the decree, which was entered ten years

after passage of chapter 6, Acts of 1895. That Act expressly empowered the Synods to elect the directors.

Such was the uncertain legal status of the governing boards of the institution when, preliminary to the removal of the University from Clarksville to Memphis, the charter was amended under chapter 98, Pub. Acts of 1923. Upon acceptance of the charter as amended under that Act, the relation of the corporation to the Synods rested no longer upon uncertain reliance upon collateral agreements, custom, or the right of the patron to control the institution.

The charter applied for under chapter 98, Pub. Acts of 1923, and approved and accepted by the Synods and by Southwestern, superseded all contrary and antagonistic laws and customs. Under the charter as amended, power was expressly given the Synods to elect the directors and fix their number. Under the plan of union and the first charter, each Synod elected two directors. Under the amended charter, which was approved and accepted by the Synods and by the corporation, membership of the board was fixed by the Synods at three from each Synod. But in 1924, upon overture by the Board of Directors, the Synods, by separate but concurrent resolutions, increased the directors from three to four for each Synod, one of which should be a resident of Memphis, a Presbyterian, and a person recommended by the Board of Directors.

In 1931 the Synod of Mississippi repudiated that part of the concurrent resolution providing that the fourth member should be a resident of Memphis and that in his selection the Synod should be guided by and act upon the recommendation of the Board of Directors. The Synod declared that all its appointees on the board should

come from within the bounds of the Synod, and appointed Dr. W. H. McIntosh, a resident of Hattiesburg, Mississippi. He accepted the appointment by subscribing to the Synod's form of acceptance, embodied in a resolution of March, 1933, headed ''Provision for the Election of Directors of Southwestern,'' and which reads:

''1. Synod shall elect its director or directors of the Board of Directors of Southwestern by ballot, and shall define in a form of acceptance the duties of a director as agent of Synod, his election being conditioned upon his acceptance of this form.

''2. When anyone shall receive a majority of the votes cast, the Stated Clerk of the Synod shall present to him the form given herein for his immediate acceptance; and if, as, and when he shall sign the same he shall be declared elected to membership on the Board of Directors of Southwestern.

''3. Form of Acceptance. I accept the office of Director of Southwestern to which the Synod has elected me; and obligate myself to respect and obey the provisions of the Charter of Southwestern as these have been interpreted or in future may be interpreted by the resolution of the Synod of Mississippi; I recognize that Southwestern is owned and controlled by the several Synods; and that said Synods have the right to determine the policy of the school; and that only the affairs of administration have been committed to the Board of Directors. In accepting membership on the Board of Directors I agree that the tenure of my office shall be at the will of the Synod of Mississippi. As the charter provides that nothing shall be done contrary to the Constitution, Rules, and Regulations of the Presbyterian Church U. S. or of the controlling Synods, I stand ready to answer

affirmatively the questions prescribed for officers in the Presbyterian Church U. S. found on page 78, paragraph 148, Book of Church Order. I obligate myself to keep Southwestern in full accord with the doctrines and teachings of the church to which it belongs.

"4. The foregoing election and acceptance, officially certified by the Moderator and by the Clerk of Synod, shall constitute an election to membership on the Board of Directors of Southwestern without any action from the Board of Directors of Southwestern or any other body."

The Board of Directors refused to receive Dr. McIntosh as a member because he had not been recommended for appointment by the board and was not a resident of Memphis. The legality of the McIntosh appointment and the proceedings of the Synod of Mississippi repudiating the resolution increasing the number of directors of each Synod from three to four raised the questions upon which the parties by their pleadings sought a declaratory judgment.

The chancellor decreed under the prayer of the bill (1) that the concurrent resolutions of the Synods of 1924 amplifying the plan of union was binding upon all the Synods until modified or abrogated by their mutual consent. (2) That the by-laws of Southwestern embodying the substance of the concurrent resolutions of 1924 were valid and binding upon all members of the corporation until amended or repealed in the manner provided by organic law of the corporation. (3) That Dr. W. H. McIntosh being a resident of Hattiesburg, Mississippi, and not a person recommended by the Board of Directors of Southwestern for election as the fourth director of Southwestern from the Synod of Mississippi

is not qualified to hold the office and as such could not participate in proceedings of the Board of Directors. (4) Upon the cross bill the chancellor decreed that the form of acceptance above quoted was contrary to public policy and void.

Complainants appealed and insist that the decree of the chancellor is erroneous and contrary to powers conferred by the statute and by the charter upon each of the patronizing Synods.

As before stated, all antagonistic provisions of the original charter, the plan of union, and by-laws were superseded by the charter as amended under chapter 98, Pub. Acts of 1923, and so the rights of the litigants must be determined by reference to the charter as amended and by subsequent acts of those exercising power under the charter.

■ In addition to conferring upon the Synods the power to fix the number of directors, prescribe the terms of their office, elect their successors and fill vacancies, chapter 98, Pub. Acts of 1923, which is read into the charter, expressly, and apparently with emphasis, declares that the Synods shall have equal representation numerically upon the Board of Directors and shall each have the right to elect its own representatives on the board. The Synods are separate entities. Therefore it must be implied that the power given them by statute to fix the number of directors means that they shall do this by joint or concurrent unanimous action, subject to change only by similar concurrence. By concurrent resolutions the Synods increased the number of directors from three to four from each Synod and provided in the resolution that one of the four directors should be a resident of Memphis and a nominee of the Board of Directors.

There is no limitation in the charter upon the power of the Synods, by concurrent and unanimous action to prescribe the qualification of directors, by reference to residence or church affiliation.

██ The Synod of Mississippi, after joining in the concurrent resolution to add the additional director and prescribe his qualifications by reference to residence and church affiliation, could not assert the right to appoint this additional member and at the same time repudiate or reject so much of the resolution as prescribed the qualification of such member. We therefore concur in so much of the chancellor's decree as declared Dr. W. H. McIntosh ineligible to membership on the Board of Directors because he was not a resident of Memphis. But we do not concur in the declaration contained in the decree that Dr. McIntosh was ineligible because not a nominee of the Board of Directors.

██ When the charter and the statute under which it was granted and considered together, and in connection with the objects designed by enactment of the charter act, it is plainly apparent that the Synods are given exclusive power to appoint the directors who, after appointment, become directors of the corporation clothed with exclusive power over all matters of administration for the term fixed by concurrent action of the Synods.

██ The provision in the concurrent resolution, increasing the directors from three to four by each Synod, that in making the appointment the Synod shall be guided by an act upon the recommendation of the Board of Directors of Southwestern, contravenes the provision of the statute which provides that the Synods shall have equal representation numerically upon the Board of Directors, and shall each have the right to elect its own rep-

resentatives upon the board. The power thus conferred upon each Synod could not be legally assumed by the Board of Directors nor could it be delegated by the Synods, and the illegal delegation or surrender of the power by the Synods jointly cannot be enforced against the will of the Synod of Mississippi. But the Synod of Mississippi can only appoint directors. It cannot control their tenure of office or their exercise of discretion.

We concur in so much of the chancellor's decree as declares that the Synod of Mississippi cannot legally control, by resort to the form of acceptance heretofore quoted, the exercise of discretion or judgment of its appointees on the Board of Directors and cannot by such method limit the tenure of a director or make his election dependent upon a contingency. A declaratory judgment will be accordingly entered.

The costs will be taxed equally against the complainants and the defendants.